Nestor CARRASQUILLO, Plaintiff,

v.

The CITY OF NEW YORK, et al., Defendants.

No. 03–CV–9027 (CM).

United States District Court, S.D. New York.

June 25, 2004.

Nestor Carrasquillo, Coxsackie Correctional Facility, Coxsackie, NY, pro se.

Seth D. Eichenholtz, City of New York Law Department, New York, NY, for Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

MCMAHON, District Judge.

Plaintiff Nestor Carrasquillo brings this action seeking compensatory and punitive damages against Defendants City of New York (the "City"), Elmhurst Hospital (the "Hospital"), and the following employees of the New York City Department of Correctional Services (DOCS), sued in their individual and official capacities (collectively, the DOCS Employees): William Fraser, Gary Lanigan, Darryl Harrison, Elizabeth Laconsolo, Linda Lagreca, John Antonelli, Elmer Toro, Antonio Figueroa, Luis Burgos, Thomas Antenen, Catherine Raymond, Anthony Serra, Steven Conry, Jorge Ocasio, Leroy Grant, Terrence Skinner, Caroline Thomas, McGugins, Linda Lidz, Burt Schall, "John Doe," Richard Pagan, George Jeanty, Azmat Hasan, and Nicholas Pantea. Plaintiff claims (1) a civil rights violation under 42 U.S.C. §§ 1983 and 1985, and (2) a violation of the Americans with Disabilities Act.

The City Defendants (all served defendants except Elmhurst Hospital and Pantea) move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is granted in part and denied in part.[1]

---

1. Defendants Lanigan, Toro, Figueroa, Serra, and Skinner have apparently not been served. It is not clear whether Elmhurst Hospital has been served. City Comptroller William Thompson was served with a summons and complaint, according to the docket sheet, but

### Standard for Motion to Dismiss

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether Plaintiff is ultimately likely to prevail, but whether he is entitled to offer evidence to support his claims. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in Plaintiff's favor. *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir.2000). Moreover, when the complainant is pro se, the court must construe the pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by 'lawyers.'" *Id.* at 520–21, 92 S.Ct. 594 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### Background

This case arises out of a prisoner's allegation that he was injured in a bus accident while riding as a passenger on a DOCS bus from Rikers Island to court. Plaintiff contends that he was injured due to the bus driver's misconduct and thereafter denied proper medical treatment for the injuries he sustained in the bus accident.

Plaintiff alleges that on February 7, 2003, while he was in the custody of DOCS

---

he is not named as a defendant in either the complaint or the amended complaint, so the indication of service is either intended as an indication of service on the City or was entered in error by the Clerk of the Court.

and being transported to a New York County courthouse, the bus on which he was a passenger collided with a truck on the Manhattan Bridge. He claims that the accident was the fault of the "reckless" bus driver, identified only as "John Doe," who "was traveling at an excessive . . . speed . . . despite icy conditions." (Am.Compl. ¶ 5.)

While on the bus, Plaintiff was handcuffed and was not provided with a seatbelt. He alleges that in the crash he sustained injuries to the head, spine, back, neck, legs, and hips, temporarily lost consciousness, and now suffers from migraine headaches, faintness, chest pains, periods of unconsciousness, and breathing problems. Plaintiff claims that the City is responsible for the bus driver's "recklessness" and for failing to provide safe transportation by forcing handcuffed inmates to ride without seat belts. (Am.Compl. ¶ 4.)

At the scene of the accident, Plaintiff allegedly requested medical attention, but was denied immediate treatment and was instead threatened, harassed, and forced to continue traveling to the courthouse while "in extreme pain and suffering." (Compl. ¶ 7.) Plaintiff later received medical treatment at Elmhurst Hospital in Queens, but claims he was denied "appropriate medical treatment," which, according to Plaintiff, would have included an examination for internal injuries.

On February 9, 2003, Plaintiff saw DOCS medical Employee Jeanty on sick-call procedure. When Plaintiff requested an appointment with a specialist to examine Plaintiff's injuries, Jeanty allegedly "became furious," raised his voice, threatened and harassed Plaintiff, and told him to leave without any treatment.

Plaintiff then saw another medical Employee, Hasan, who prescribed Tylenol and Motrin for Plaintiff's pain. Plaintiff, however, contends that he requested, but was denied, a crutch or cane; he further alleges that the medication Hasan prescribed caused Plaintiff chest pains. When Plaintiff requested more treatment, Hasan allegedly stated that "the health services still did not have the medication," that "too much money was being spend [sic] on [Plaintiff]," and that Plaintiff "should just go back to his tier and ask for Tylenol." (Am.Compl. ¶ 15.)

Plaintiff then sought medical attention on April 22, 2003, from DOCS medical Employee Pantea, who also denied him a crutch or cane, despite "knowing" of the deterioration of Plaintiff's body, and that "plaintiff could hardly support himself." (Am.Compl. ¶ 18.)

Plaintiff further claims that he took several steps to report and receive more adequate help for his injuries, but that his complaints and requests were either ignored or not handled properly. In the weeks following the accident, Plaintiff asserts, he reported the problems with the medical staff, requested further medical treatment, and asked DOCS to conduct an investigation into the bus accident that had caused Plaintiff's injuries. He directed these letters to the following DOCS administrative Employees, who allegedly ignored all of Plaintiff's letters: Thomas, McGugins, Ocasio, Skinner, Grant, Conry, Lidz, Schall, Serra, Raymond, Antenen, Burgos, Figueroa, and Toro.

Plaintiff also filed two grievances with the Department of Correction's Inmate Grievance Resolution Program on February 10, 2003. In the first grievance, Plaintiff explained that he had been in a bus accident, and requested a hearing, an investigation, an examination by an orthopedic surgeon, and a cane and crutches. (Ex. H.) In the second grievance, Plaintiff explained his alleged physical and mental suffering, vaguely requested "help" from

DOCS, and threatened to sue if he were not given help. Plaintiff resubmitted identical grievances on April 2, 2003.

Finally, Plaintiff claims, despite his difficulty walking, he was placed in housing that was "a distance away from the infermary [sic], law library" and other services, and so had to walk great distances to use those services, which caused him substantial pain and suffering. (Am.Compl. ¶¶ 2–3.)

Plaintiff has sued the City in state court for the injuries he suffered in the bus accident. I construe the allegations of this complaint in a manner that does not duplicate Plaintiff's state court claims. After parsing his rambling complaint, I conclude that Plaintiff asserts the following claims against Defendants:

1. John Doe, the City, and the DOCS administrative Employees are liable for causing Plaintiff's injuries and failing to respond to Plaintiff's numerous demands for an investigation into the February 7 bus accident, in violation of 42 U.S.C. § 1983.

2. The DOCS Employees are liable for violating Plaintiff's Eighth Amendment right (a) by denying Plaintiff proper treatment for his debilitating injuries; and (b) by failing to respond to Plaintiff's numerous complaints about inadequate medical treatment, in violation of 42 U.S.C. § 1983.

3. The DOCS administrative Employees are liable for conspiring to cover up the bus accident, Plaintiff's injuries, and Plaintiff's alleged denial of adequate medical treatment, in violation of 42 U.S.C. § 1985.

4. The DOCS Employees are liable for placing Plaintiff in housing that was far away from prison services, thereby forcing Plaintiff to walk great distances and experience great pain,

in violation of the Americans with Disabilities Act (ADA).

5. The City is liable because its employees deprived Plaintiff's of his civil rights, in violation of 42 U.S.C. § 1983.

## Discussion

A. *The Complaint is Dismissed as Against Defendant Pagan.*

■ Despite naming him as a party, Plaintiff does not mention Defendant Pagan anywhere in his complaint, or specifically allege his personal involvement in any of the actions that led to the alleged deprivations of Plaintiff's constitutional or federal rights. The complaint against Defendant Pagan is therefore dismissed. *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)

B. *The City Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies is Granted with Respect to Plaintiff's Claims Relating to the Bus Accident.*

■ Defendants first move to dismiss all of Plaintiff's claims relating to the bus accident and the adequacy of the investigation into that accident, on the ground that Plaintiff never exhausted his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

In this case, Plaintiff alleges that he exhausted his administrative remedies by filing two grievances with the Rikers Island Inmate Grievance Resolution Committee (IGRC) on February 10, 2003, three days after the bus accident, and refiling those same grievances on April 2, 2003. Both of the grievances address the adequacy of his medical care. (Ex. H.) Neither grievance sought any investigation into the circumstances of the bus accident.

Defendants concede that Plaintiff has standing under the PLRA to prosecute his claims insofar as they relate to the denial of medical treatment. (Moving Br. at 6.)

Defendants are correct that Plaintiff has not grieved his claims regarding the bus accident in accordance with DOCS procedures, as set forth in Ex. G to the Eichenholtz declaration, since neither of his grievances (each of which was filed on two occasions, one within three days as required by the policy and one two months later, to indicate a continuing condition) mentions the bus accident except in passing, and Plaintiff does not seek any relief with respect to the bus accident. For that reason, all claims relating to the bus accident must be dismissed.

C. *Plaintiff's Claims That John Doe, the City, and the DOCS Administrative Employees Are Liable For Causing Plaintiff's Injuries and Not Investigating the Bus Accident Are Dismissed.*

Assuming arguendo that Plaintiff's two grievance forms could somehow be interpreted to include a grievance concerning the circumstances of the bus accident, his § 1983 claims touching on that incident must nonetheless be dismissed.

 Auto accidents do not, in and of themselves, give rise to federal causes of action. Individuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury, (2) to have the government protect them from such an injury, or (3) to have the government investigate the cause of such an injury. Plaintiff's claims stemming solely from the circumstances of the bus accident are therefore not actionable under 42 U.S.C. § 1983.

 First, Plaintiff alleges that the bus driver, unserved Defendant John Doe,

by causing Plaintiff's injuries, violated Plaintiff's Eighth Amendment rights. But neither the Constitution, nor any federal statute guarantees a prisoner's right to non-negligent driving by government employees. Such claims fall under the purview of state tort law, not § 1983. The Supreme Court held in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), where an inmate sued a police officer under § 1983 for negligently inflicting injuries, that the Due Process clause would be "trivialized" if it were extended to cover injuries caused by the negligent action of state officials. *Id.* at 332, 106 S.Ct. 662. Section 1983 claims are therefore "not to be used to duplicate state tort law at the federal level." *Washington v. District of Columbia,* 802 F.2d 1478, 1480 (D.C.Cir.1986).

 Plaintiff alleges that Defendant Doe was reckless, not merely negligent, when he drove at an excessive speed in icy road conditions. But this adds nothing of legal significance to Plaintiff's claim. The Seventh Circuit held in *Hill v. Shobe,* 93 F.3d 418, 421 (7th Cir.1996), that "[a]llegations of a public official driving too fast for the road conditions are grounded in negligence, not criminal recklessness" (citing *Apodaca v. Rio Arriba Cty. Sheriff's Dep't,* 905 F.2d 1445, 1446–47 (10th Cir.1990)). Furthermore, deaths and injuries resulting from a state employee's lack of due care do not implicate the Constitution. *Id.* (citing *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

Indeed, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), one of the seminal cases interpreting liability under § 1983, identifies civil rights cases stemming from car crashes as paradigms of the absurdity that could result from an overly broad interpretation of § 1983. "[U]nder this rationale," Parratt teaches, "any party who is involved in nothing more

than an automobile accident with a state official could allege a constitutional violation under § 1983." *Id.* at 544, 101 S.Ct. 1908; *see also Hill v. Shobe,* 93 F.3d 418, 420–21 (7th Cir.1996) (quoting *Parratt* and dismissing claim that police officer is liable under § 1983 for reckless driving that resulted in fatal car crash).

■ Plaintiff's claim also cannot be saved by the allegation that Defendant Doe, in driving recklessly, was "deliberately indifferent" to Plaintiff's health and safety. A claim of deliberate indifference would be actionable under § 1983 according to *Hathaway v. Coughlin (Hathaway III),* 99 F.3d 550, 553 (2d Cir.1996). But Plaintiff's *Hathaway* claim against Defendant Doe is misplaced: *Hathaway* applies to public officials' deliberate indifference to a plaintiff's *medical* needs, in violation of the Eighth Amendment's proscription against cruel and unusual punishment. It does not cover vehicular accidents that expose a plaintiff to the risk of injury.[2]

Second, Plaintiff asserts that the City is liable for causing his injuries in the first place by failing to provide him with a seatbelt while he was forced to ride handcuffed in the ill-fated bus on February 7, 2003. Liberally construed, Plaintiff's complaint can be read to allege the existence of a municipal policy that would satisfy the standard laid out in *Monell v. Department of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and give rise to municipal liability under § 1983. *Monell* held that local governments can be sued for adopting an official policy, or acquiescing to an unofficial governmental "custom," that leads to deprivations of a plaintiff's federal rights. *Id.* at 690–691, 98 S.Ct. 2018. Read charitably,

Plaintiff's complaint alleges that the City has adopted the policy of not providing prisoners with adequate protection on corrections busses, thus denying them their Eighth Amendment rights in the case of a fatal or debilitating accident.

■ This claim must also be dismissed, since failure to provide seatbelts to prisoners is not a constitutional violation under § 1983. The Supreme Court has held that protection from harm in general is not a constitutionally secured right. The Due Process Clause, it noted in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), is a limitation on state power to act, and is not a guarantee of protection or safety. *Id.* at 195, 109 S.Ct. 998. State actors may not deprive individuals of life, liberty, or property without due process of law, but they have no affirmative obligation "to ensure that those interests do not come to harm through other means." *Id.*

Furthermore, while the Second Circuit has not specifically dealt with the issue of seatbelts in state or municipal vehicles, two other Courts of Appeals have held that a municipality's decision not to provide prisoners with seatbelts does not violate prisoners' federal rights. The Eighth Circuit has held that a municipality's "decision to use patrol wagons without seatbelts" was lawful, since it was based on the legitimate penological concern that detained "individuals transported in the wagon, even those who were handcuffed, could use the seatbelt as a weapon to harm an officer, other passengers being transported in the wagon, or even themselves." *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 907 (8th Cir.1999). The Tenth Circuit

---

**2.** John Doe has not been sued, obviously, since he has not been identified and therefore cannot be served. But Plaintiff cannot maintain an action against Doe, regardless, for the reasons set forth in the text. I analyze Plaintiff's claim against Doe so that I can address his corresponding claim against the City, which I do in Part I.

has noted that "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension" because the "eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted." *Dexter v. Ford Motor Co.*, 92 Fed.Appx. 637, 641 (10th Cir.2004) (unpublished opinion).

Plaintiff tries to bolster his claim by noting that New York State law requires seatbelts on busses. While this may help his tort claim against the City in State court, it is irrelevant to whether denial of seatbelts to prisoners violates prisoners' constitutional or federal rights. Accordingly, this claim against the City is dismissed.

▮▮▮▮ Last, Plaintiff claims that DOCS administrative Employees McGuggins, Lidz, Conry, Serra, Raymond, Antenen, Figueroa, and Toro violated his constitutional rights by not responding to his letters demanding an investigation into the February 7 bus accident and the behavior of the officers who forced Plaintiff to ride to the courthouse afterwards. Section 1983 only makes officials liable for personal involvement in the deprivation of rights secured by the constitution or other federal laws. Plaintiff not only has no federally secured rights arising out of the circumstances of the bus accident, but he also has no constitutional or federal right to an investigation into that bus accident, or to have his requests for an investigation answered. To the extent that Plaintiff's claims concerning the lack of an investigation into the bus accident are cognizable under the exhaustion doctrine, his claim is dismissed.

**3.** This claim is also asserted against two other DOCS medical Employees, Defendants Jeanty and Pantea. However, the docket sheet indicates that neither of those defendants has yet been served with process, and the 120 days permitted for service has expired. Fed.

### D. *Plaintiff's Claim That DOCS Medical Employee Hasan Denied Him Adequate Medical Treatment Is Not Dismissed.*

▮▮▮▮ While Plaintiff has no federally secured right arising out of the bus accident itself, there is no doubt that he has a constitutional right, under the Eighth Amendment, to receive proper medical treatment for any injuries he may have sustained in that accident. Therefore, Plaintiff's claims against DOCS medical Employee Hasan, alleging inadequate medical treatment, are not dismissed pursuant to Rule 12(b)(6).[3]

▮▮▮▮ As Defendants point out, mere "[a]llegations of medical malpractice or negligent failure to provide treatment will not suffice to support an action under 42 U.S.C. § 1983." *Sha v. Memorial Sloan–Kettering Cancer Ctr.*, 99–CV–3233 (AKH), 2000 WL 1760883, at *2, 2000 U.S. Dist. LEXIS 17291, at *5–6 (S.D.N.Y. Nov. 30, 2000) (quoting *Owens v. Bellevue Hosp. Ctr.*, No. 95–9016, 1996 WL 134227, at *1 (2d Cir. Mar.25, 1996) (unpublished disposition)). Plaintiff's claim can survive a pre-answer motion only if it alleges "deliberate indifference" to serious medical needs by prison doctors in their response to Plaintiff's request for medical attention. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations and footnotes omitted).

▮▮▮ Deliberate indifference has both an objective and a subjective element.

R.Civ.P. 4(m). If Plaintiff learns of the whereabouts of Jeanty and Pantea during what remains of this lawsuit, he can ask that another summons issue and request the Court's permission to serve them out of time.

*Hathaway v. Coughlin (Hathaway III),* 99 F.3d 550, 553 (2d Cir.1996). The objective prong requires that the alleged deprivation be " 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* The subjective prong requires that the charged official have the requisite state of mind, which is the equivalent to criminal recklessness: knowledge of, and conscious disregard for, this serious risk. *Id.*

When the complaint is liberally construed, it alleges both the objective and subjective elements of the deliberate indifference standard. Plaintiff claims that his injuries have caused him "extreme pain and suffering," that his body is deteriorating, and that he can "hardly support himself." (Am.Compl. ¶¶ 18, 42.) Such a condition counts as "sufficiently serious" under *Hathaway,* since a risk of both degeneration and extreme pain is alleged.

Furthermore, assuming the allegations are true, parts of the complaint suggest that Plaintiff's condition should have been apparent to Hasan (the only moving defendant on this claim). First, Plaintiff could hardly walk. Second, he repeatedly told doctors, for nearly two months, that Tylenol was not enough either to ease his pain or treat his condition. Nevertheless, the DOCS medical staff allegedly denied Plaintiff a crutch or a cane to help him walk, prescribed only Tylenol, and refused to refer Plaintiff to a specialist when Tylenol did not work. If Plaintiff had (as he alleges) such a severe condition, and continually sought more thorough medical treatment for at least two months, one could infer that the medical staff was on notice of the severity of Plaintiff's condition but refused to treat him anyway because, as Hasan

allegedly said, "too much money already was being spen[t] on him." (Am.Compl. ¶ 15.) Construing Plaintiff's allegations liberally and assuming they are true, as I must do when considering this motion to dismiss a pro se complaint, I cannot say that plaintiff could prove no set of facts that would not rise to the level of deliberate indifference under the *Hathaway* test.

Of course, Plaintiff's allegations may well be exaggerated, or even false. But that is not something I can consider on a motion to dismiss. Defendant Hasan's motion is therefore denied with respect to the claims that he was deliberately indifferent to plaintiff's urgent medical needs.

E. *Plaintiff's Claims Against the DOCS Administrative Employees Concerning Their Alleged Failure to Respond to His Complaints About Inadequate Medical Treatment Are Not Dismissed.*

██ Plaintiff alleges that DOCS administrative Employees Thomas, Schall, Ocasio, Skinner, Burgos, Harrison, Lanigan, Raymond, Antenen, Antonelli, Lagreca, and Fraser did not respond to his numerous complaints about his inadequate medical treatment.[4]

██ In order to state a claim against these Employees, who were not immediately implicated in Plaintiff's denial of medical care, Plaintiff must allege that they were still personally involved in the deprivation of Plaintiff's civil rights, as § 1983 requires. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). The Second Circuit has summarized the various circumstances in which a supervisory official may be liable for personal involvement in the alleged wrongdoing: (1) when the

---

4. Defendants Skinner and Lanigan have not yet been served. Nonetheless, as the City points out, the same arguments apply to them that apply to the other DOCS administrative Employees in connection with this claim.

official directly participated in the infraction; (2) when the official, after learning of the violation through a report or appeal, fails to remedy the wrong; (3) when the official creates a policy or custom under which unconstitutional practices occurred, or allows such a policy or custom to continue; or (4) when the supervisory official is grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* at 323–24 (citations omitted).

Read in the most favorable light, Plaintiff's complaint alleges the second possibility: that the named DOCS Employees were aware of, but failed to remedy, the ongoing violations of Plaintiff's constitutional right to receive adequate medical attention for a debilitating condition. Whether or not these officials actually knew of violations and were in a position to stop them—or, for that matter, whether Plaintiff's rights actually were violated—is not relevant for the purposes of a 12(b)(6) motion.[5] Read most charitably, Plaintiff's complaint alleges that these supervisory officials were made aware of the medical staff's unconstitutional practices, but nevertheless let them continue. That is sufficient to state a claim under § 1983. With respect to the claim that the named DOCS administrative Employees are liable for failing to respond to requests for more medical treatment, Defendants' motion to dismiss is denied.

**F. *Defendants' Motion to Dismiss the Deliberate Indifference Claims on the Ground of Qualified Immunity is Denied.***

■ Hasan and the DOCS administrative Employees move in the alternative to dismiss this claim on the ground of qualified immunity.[6] This motion is also denied.

■ Qualified immunity "shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stephenson v. Doe,* 332 F.3d 68, 76 (2d Cir.2003) (internal citations and quotations omitted). In other words, government officials are immune from suit when they are not on notice that their actions are unconstitutional, or when their actions violate federal rights of which a reasonable person would not be aware.

As outlined above, Plaintiff alleges that the DOCS medical Employees (including Hasan) were deliberately indifferent to plaintiff's urgent medical needs, and that the DOCS administrative Employees failed to remedy this ongoing constitutional violation even after learning about it. If these (charitably read) allegations are true (and I must assume that they are), then qualified immunity would not attach to their actions. The Eighth Amendment right to

**5.** Plaintiff seems to have sent letters to a wide variety of DOCS officials, some of whom would ordinarily be dismissed as defendants under the doctrine that a person who is not directly involved in the deprivation of rights cannot be sued under § 1983. I imagine that I will some day entertain a motion for summary judgment on this claim. Unfortunately, at the pre-answer stage, I am constrained to interpret the complaint in Plaintiff's favor at every turn.

**6.** Some months ago, this Court issued rules that were to be followed in connection with

applications for dismissal on qualified immunity grounds. The procedure includes the taking of the plaintiff's deposition, so that the entire contour of the claim could be explored, followed by a motion for summary judgment. Defendants apparently are not familiar with my local rules, and have made a pre-answer motion to dismiss on qualified immunity grounds. I am addressing that motion, but note that, once Plaintiff has been deposed, a motion for summary judgment can be entertained.

receive adequate medical treatment is both clearly established and well-settled, *see, e.g., Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), so deliberate indifference and failure to remedy deliberate indifference are never objectively reasonable.

■ If, after Plaintiff's deposition is taken (as should have already happened before this motion was made, *see* Local Rule of Judge McMahon 3(c)), it turns out that Plaintiff is merely complaining of negligence/medical malpractice, or that he simply differed with the approach taken by his physicians (which is not actionable under § 1983), then there is no constitutional violation, and on a motion for summary judgment the issue of qualified immunity will drop out of the case.

G. *Plaintiff's Allegations That the DOCS Employees Are Liable for Conspiring to Cover up the Injuries Plaintiff Sustained in the Bus Accident Fail to State a Claim Under 42 U.S.C. § 1985.*

■ In addition to his numerous claims under § 1983, Plaintiff also alleges that Defendants Grant, Laconsolo, Antonelli, and the DOCS Administrative Employees who allegedly failed to remedy Hasan's deliberate indifference to his medical needs, conspired to violate Plaintiff's civil rights, which is proscribed by 42 U.S.C. § 1985. This claim is dismissed.

■ In order to maintain an action under § 1985, Plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) (citation omitted). The Second Circuit has further held that when a plaintiff has not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants, his conspiracy claim must be dismissed. *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir.2003); *see also Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (holding that dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Plaintiff's claim of a conspiracy is too conclusory, vague, and general to sustain an action under § 1985. Plaintiff merely asserts, without any attempt to show a "meeting of the minds" among Defendants, that various DOCS Employees conspired to violate his rights. His complaint "fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996). Plaintiff's claim that the DOCS Employees conspired to violate his rights is dismissed without prejudice.

H. *Plaintiff's Claim That the DOCS Employees Are Liable for Placing Him in Housing That Was Far Away From Prison Services Is Not Actionable.*

Plaintiff contends that the DOCS Employees are liable under the Americans with Disabilities Act (ADA) because they placed Plaintiff in housing that was far from such prison services as the law library and infirmary, thus forcing Plaintiff to walk great distances to use these facilities and causing him great pain due to his medical condition.

■ Individuals cannot be named as defendants in ADA suits in either their official or representative capacities. *See, e.g., Hallett v. New York State Dep't of Correctional Servs.,* 109 F.Supp.2d 190, 199–200 (S.D.N.Y.2000) (dismissing ADA claims asserted against individual defendants because Title II provides disabled individuals redress for discrimination by a

*public entity*, which, as it is defined in the statute, does not include individuals) (emphasis added); *see also Candelaria v. Cunningham*, No. 98 Civ. 6273, 2000 WL 798636, at *2 (S.D.N.Y. June 20, 2000) (finding no individual liability for prison officials under Title II of the ADA); *Nucifora v. Bridgeport Bd. Of Educ.*, No. 3:99 Civ. 00079, 2000 WL 887650, at *2 (D.Conn. May 23, 2000) (dismissing Title II claims against individuals in light of "overwhelming authority prohibiting individual liability under the ADA"); *Lee v. State of New York Dep't of Correctional Servs.*, No. 97 Civ. 7112, 1999 WL 673339, at *13 n. 14 (S.D.N.Y. Aug. 30, 1999) (dismissing Title II claims against corrections officers for "lack of individual liability under the ADA"). Accordingly, Plaintiff's claim against the DOCS Employees in their individual and official capacities must be dismissed.

Construed liberally, Plaintiff's complaint can be read to assert an ADA claim against the City (or DOCS, the City's agency). Such a claim *is* actionable under *Tennessee v. Lane*, ── U.S. ──, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (upholding ADA's abrogation of a State's Eleventh Amendment immunity, and finding that liability extends to include state and local governments, as well as their agencies and instrumentalities). But Plaintiff's claim must nevertheless be dismissed.

■ The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), ruled that "[a]ll avail-

able remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective." *Id.* at 524, 122 S.Ct. 983 (citations and internal quotations omitted). The Court noted that § 1997e(a) in its current form extends to "all actions … brought with respect to prison conditions, whether under § 1983, or any other federal law." *Id.* (internal quotations omitted). The ADA falls within the rubric of "any other federal law."

Defendants concede in their Moving Brief that ADA claims are not subject to exhaustion under the PLRA (Moving Br. p. 6, n. 4) because the ADA itself contains no exhaustion requirement and allows complainants to file a private suit "at any time." *Singleton v. Perilli*, 03–CV–2271 (DC), 2004 WL 74238 at *4, 2004 U.S. Dist. LEXIS 501 at *13–14 (S.D.N.Y. Jan 16, 2004) (citing 28 C.F.R. § 35.172(b) and declining to dismiss prisoner's ADA claim for failure to exhaust DOJ administrative remedies). As applied to Plaintiff's claim, this is a dubious concession. While 28 C.F.R. § 35.172(b) and 42 U.S.C. § 1997e(a) might seem to be in conflict, in fact they are not. Congress has expressly provided that prisoners may not bring any claim addressed to prison conditions without exhausting the administrative remedies available to them. Since Plaintiff is complaining about where he was housed, and since the location of his housing unit would seem to this Court to be quintessentially a "prison condition," Plaintiff is out of court for failure to exhaust. I doubt that § 35.172(b), an administrative regulation, was meant to override Congress' express limitation on a prisoner's ability to file claims like the one at bar. Certainly, the Second Circuit has not so held. Indeed, the United States Supreme Court has ordered exhaustion in cases like this one. *See, e.g., Porter v. Nussle*, 534 U.S.

516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that exhaustion of administrative remedies, pursuant to PLRA, is required for *all* prisoner suits seeking redress for prison circumstances or occurrences) (emphasis added).

Even if Plaintiff were not bound by the exhaustion doctrine, his ADA claim against the City and DOCS would still be dismissed.

 Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be *excluded* from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added).

 Plaintiff's claim fails because it does not allege that Plaintiff was *prevented* from participating in or benefiting from prison programs and services because of his disability. When an ADA claim does not state that a plaintiff was excluded from a prison service or program because of his disability, it must be dismissed. *See, e.g., Burgess v. Goord*, No. 98 Civ.2077, 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where inmate did not allege that he was prevented from using recreation yard or attending religious services because of his severe difficulty walking on stairs); *Devivo v. Butler*, No. 97 Civ. 7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov.10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind).

Plaintiff asserts that he was housed a distance away from such prison services as the law library and infirmary and that he had difficulty walking to them. He does not allege that he was prevented altogether from accessing them. Indeed, the complaint even concedes that Plaintiff was able to access the infirmary on several occasions. Plaintiff's allegations are therefore insufficient to state a claim under the ADA.

 Ordinarily, I am required to dismiss an unexhausted claim without prejudice, even if, on the face of the prison grievance procedure, the time for filing a grievance has expired. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). However, since Plaintiff's factual allegations do not meet the pleading requirements for a viable ADA claim against the named Defendants, I dismiss the complaint with prejudice.

I. *Plaintiff's Claim That the City is Liable for the Deprivations Caused by Its Employees Is Not Actionable Under § 1983.*

Liberally construed, Plaintiff's complaint alleges that the City is liable under *respondeat superior* for the bus driver's reckless driving, and for any of the DOCS Employees' actions that led to deprivations of Plaintiff's federal rights. This claim is not actionable under § 1983, and so is dismissed.

First and foremost, the claims relating to the bus accident are dismissed because the facts alleged, even if they are true, do not give rise to any federal or constitutional violation. (*See supra*, Part C.)

 Second, the Supreme Court has held that a "municipality cannot be held liable solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, Plaintiff must claim that the City is responsible for establishing a policy or custom that directly caused the alleged deprivations of his rights. *Id.* at

694, 98 S.Ct. 2018; *see also City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff has not alleged such a policy.

 Insofar as the bus accident is concerned, Plaintiff has not claimed, nor could he claim, the existence of a municipal policy to harm prisoners through reckless driving. The Supreme Court held in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), that "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* ... [T]he existence of the unconstitutional policy, and its origin, must be separately proved." *Id.* at 823–24, 105 S.Ct. 2427. Therefore, a single instance of a single driver's recklessness causing a single bus accident is insufficient to establish the existence of a municipal policy.

There is also no *Monell* liability for the City's failure to provide seatbelts, for the reasons stated above.

 Further, Plaintiff has not alleged the existence of a city policy to deny prisoners adequate medical care. The complaint only discusses Plaintiff's individual experience with the DOCS Employees' unlawful behavior, not the existence of a widespread policy to treat all prisoners the same way and violate their constitutional rights as well. Indeed, Plaintiff affirmatively alleges that he was treated differently from other prisoners during sick-call procedure. (Am.Compl. ¶ 16.) Such individualized treatment belies the existence of a systematic municipal policy, and requires dismissal of a *Monell* claim of deliberate indifference.

The complaint against the City, with respect to Plaintiff's allegations that the City is vicariously liable for its employees' conduct, is therefore dismissed.

### Conclusion

This constitutes the decision and order of the court. Plaintiff has thirty days from the date of this order to file an amended complaint if he wishes to replead those claims that have been dismissed without prejudice (except for the unexhausted claim, as to which Plaintiff has thirty days from the date on which he exhausts his administrative remedies). The parties will be contacted about a Rule 16 conference.