**Rachel HAAS, et al., Plaintiffs,**

v.

**QUEST RECOVERY SERVICES, INC., et al., Defendants.**

No. 5:04–CV–409.

United States District Court, N.D. Ohio.

Sept. 20, 2004.

Paul W. Flowers, W. Craig Bashein, Bashein & Bashein, Cleveland, OH, for Rachel Haas, Carol Haas, Richard Haas, Plaintiffs.

Frank Leonetti, III, Reminger & Reminger, Cleveland, OH, Karen Soehnlen McQueen, Krugliak, Wilkins, Griffiths & Dougherty, Canton, OH, Roy A. Hulme, Reminger & Reminger, Cleveland, OH, Elise W. Porter, Office of the Attorney General, Holly J. Hunt, Office of the Attorney General, Constitutional Offices Section, Columbus, OH, for Quest Recovery Services, Inc., State of Ohio, Defendants.

## OPINION AND MEMORANDUM

GWIN, District Judge.

Defendant the State of Ohio ("Ohio") moves this Court under Fed.R.Civ.P. 12(b)(6) to dismiss the above-captioned action for failure to state a claim upon which relief can be granted. Alternatively, Ohio moves to dismiss the action for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1). Plaintiffs Rachel, Carol, and Richard Haas oppose Ohio's motion. After considering the pleadings and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Ohio's motion to dismiss and DENIES Plaintiffs' motion for leave to file a second amended complaint.

### I. Background

On March 1, 2004, Plaintiffs filed this lawsuit against Quest Recovery Services, Inc. ("Quest") and the City of Canton, Ohio. On June 2, 2004, Plaintiffs voluntarily dismissed the City of Canton. Shortly after and on June 11, 2004, Plaintiffs filed an amended complaint. The amended complaint added Ohio as a defendant. In her amended complaint, Plaintiff Rachel Haas generally alleges that Ohio discriminated against her based on alleged physical disabilities by denying

access to programs provided to non-disabled individuals.

The amended complaint claims that near September 19, 2002, Rachel Haas suffered various injuries when a truck struck her all terrain vehicle. Following the accident, she underwent extensive medical treatment and physical therapy. The Ohio Highway Patrol cited Rachel Haas for driving under the influence of alcohol at the time of the accident. On February 18, 2003, she pled guilty to the charges against her in Canton Municipal Court. After receiving her guilty plea, Judge Richard Kubilus sentenced Haas to confinement in Quest's drug and alcohol treatment facility in Massillon, Ohio for two six-day periods beginning March 13, 2003 and April 10, 2003.

With their complaint, Plaintiffs say Quest's facility lacked proper accommodations for Rachel Haas' injuries, such as an elevator and disabled-accessible toilets and showers. Plaintiffs allege that Quest personnel were rude and did not approve Rachel Haas' completion of the program.

## II. Legal Standard

Ohio moves under Fed.R.Civ.P. 12(b)(1) to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. A Rule 12(b)(1) motion can attack either the legal or the factual basis for jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). In this case, Ohio attacks the legal basis for jurisdiction, saying that it is immune from Plaintiffs' claims under the Eleventh Amendment of the U.S. Constitution. For purposes of deciding this motion, the Court accepts Plaintiffs' allegations as true. *Id.* Although Ohio couches its Eleventh Amendment argument as an alternative basis for dismissal, the Court addresses jurisdictional arguments first.

Ohio separately seeks dismissal under Fed.R.Civ.P. 12(b)(6) for failure to sate claim. The Court grants a Rule 12(b)(6)

motion when "it is clear that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). In deciding a motion under Rule 12(b)(6), the Court accepts all of the allegations as true and construes the complaint "liberally in favor of the party opposing the motion." *Id.* While the Court accepts all well-pleaded allegations as true, the Court does not accept the "bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). Nor does the Court accept "unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

The Court will consider only the well-pleaded factual allegations in the amended complaint itself. *Glicker v. Michigan Liquor Control Comm'n*, 160 F.2d 96, 101 (6th Cir.1947) ("In considering the motion to dismiss we are controlled by the allegations of the Complaint."). The Court does not "take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute a pleading under Rule 7(a)." 2 MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed.2002).

## III. Discussion

Plaintiffs' amended complaint sues Ohio under the following causes of action: (1) disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (2) violation of the Rehabilitation Act, 29 U.S.C. § 794(a). Ohio argues that this Court should dismiss the claims under Rule 12(b)(6) because Plaintiffs fail to state a claim against Ohio. In the alternative, Ohio argues that the Eleventh Amendment gives it immunity from Plaintiffs' claims.

Title II of the ADA states:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Section 504 of the Rehabilitation Act employs similar language:

No otherwise qualified individual with a disability in the United States ... shall, solely, by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Although the Rehabilitation Act predates the ADA, "analyses of claims made under the two acts run roughly parallel." *Mahon v. Crowell,* 295 F.3d 585, 588–89 (6th Cir.2002). The primary difference is that the Rehabilitation Act only covers programs or activities that federally-funded entities offer. *McPherson v. Michigan High School Athletic Ass'n,* 119 F.3d 453, 459–60 (6th Cir.1997). Title II focuses on services, programs, or activities that "public entities" offer, regardless of federal funding.

## A. Eleventh Amendment Immunity

■ Ohio bases its jurisdictional argument on Eleventh Amendment immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Eleventh Amendment immunity prevents federal courts from exercising jurisdiction over a claim, and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Eleventh Amendment immunity extends to suits against a state by that state's own citizens. *S.J. v. Hamilton County,* 374 F.3d 416, 419 (6th Cir.2004).

■ The Eleventh Amendment does not apply in two situations: (1) If Congress has abrogated the state's immunity, or (2) If the state has waived its immunity from suit in federal court. *Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376, 381 (6th Cir.1993). In response to Ohio's motion, Plaintiffs claim that (1) Congress abrogated Ohio's immunity to claims arising under Title II of the ADA, and (2) Ohio waived its immunity to Rehabilitation Act claims. The Court finds that Ohio has Eleventh Amendment immunity to Plaintiffs' ADA claim, but not to Plaintiffs' Rehabilitation Act claim.

*Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), provides the starting point for the Eleventh Amendment analysis. In *Garrett,* the Supreme Court held that states are immune to suits for money damages under Title I of the ADA.[1] The Court found that Title I improperly abrogated the states' Eleventh Amendment immunity because it exceeded Congress's authority to enforce the Fourteenth Amendment's Due Process Clause. The Court held that only legislation that responds to a "history and pattern of unconstitutional ... discrimination by the

---

1. Title I of the ADA generally prohibits employers from "discriminating against a qualified individual with a disability ... in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

States" is a valid exercise of Congress's enforcement authority. *Id.* at 368, 121 S.Ct. 955. The remedy imposed "must be congruent and proportional to the targeted violation." *Id.* at 374, 121 S.Ct. 955.

Additionally, the Fourteenth Amendment does not require states to accommodate the disabled if the states' actions have a rational basis. *Id.* at 367, 121 S.Ct. 955. The Supreme Court explained that Title I required accommodation despite whether the states have rational bases for disability-based distinctions. *Id.* at 372–74, 121 S.Ct. 955. As a result, Title I did not validly abrogate Eleventh Amendment immunity.

Although *Garrett* did not address Title II, the Sixth Circuit applied *Garrett*'s reasoning to Eleventh Amendment immunity for Title II claims in *Popovich v. Cuyahoga County Court of Common Pleas,* 276 F.3d 808 (6th Cir.2002). There, the plaintiff alleged that the lack of accommodations for his hearing disability prevented him from participating fully in a child custody hearing. The court concluded that Title II exceeded Congress's enforcement authority under the Equal Protection Clause, but also found that Title II may validly abrogate Eleventh Amendment immunity to enforce due process guarantees. In the court's words, Title II's "participation" requirement "serves to protect [the plaintiff's] due process right to a meaningful hearing ...." *Id.* at 815–16.

*Tennessee v. Lane,* —— U.S.——, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), is the most recent Supreme Court decision to address immunity for Title II claims. In *Lane,* the Supreme Court established that Title II is a valid exercise of Congress's Fourteenth Amendment enforcement authority to protect a plaintiff's due process right of access to the courts. *Id.* at 1992. In reaching its decision, the Court noted that Congress developed a legislative rec-

ord documenting exclusion of the disabled from courthouses and court proceedings. *Id.* at 1990.

The Court further noted that Title II extends beyond the employment discrimination that Title I targets, seeking "to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 1988. Those constitutional guarantees include (1) the right of access to the courts, (2) the right of a criminal defendant "to be present at all stages of a trial where his absence might frustrate the fairness of the proceedings," (3) the right of certain civil litigants to "a meaningful opportunity to be heard," (4) the right of criminal defendants to a trial by jury, and (5) the public's First Amendment right of access to criminal proceedings. *Id.* (citations omitted).

The Supreme Court concluded that Title II was a congruent and proportional response to the documented infringement of access to the courts. *Id.* at 1993–94. The Supreme Court made clear that the decision only addressed the right of access to the courts, and not any other application of Title II: "[N]othing in our case law requires us to consider Title II, with its wide variety of applications, as an undifferentiated whole." *Id.* at 1993.

The Court knows of no cases from the Sixth Circuit or any other circuit that apply *Lane* under the circumstances presented here. The lone case from the Sixth Circuit does not address this issue. *See S.J. v. Hamilton County,* 374 F.3d 416, 421–22 (6th Cir.2004) (applying *Lane* outside Title II context to help determine whether local government is an arm of the state for purposes of Eleventh Amendment immunity).

Nor do the cases from other circuits provide much guidance on applying *Lane*

to these circumstances. *See Badillo–Santiago v. Naveira–Merly*, 378 F.3d 1 (1st Cir.2004) (vacating dismissal of plaintiff's Title II claim that "during his trial he was denied due process because there was no reasonable accommodation for his hearing impairment"); *Roe v. Johnson*, 334 F.Supp.2d 415, 419–20 (S.D.N.Y.2004) (granting motion to dismiss Title II claim that state bar association denied plaintiff's application based on disabilities); *Douris v. Bucks County Office of the DA*, No. 03–CV–5661, 2004 WL 1529169, *4, 2004 U.S. Dist. LEXIS 12769, at *13 (E.D.Pa. July 6, 2004) (noting that inmate's Title II claim was "problematic," but granting defendants' motion for summary judgment on other grounds); *McNulty v. Board of Educ.*, Civ. No.2003–2520, 2004 WL 1554401, *3, 2004 U.S. Dist. LEXIS 12680, at *9 (D.Md. July 8, 2004) (granting motion to dismiss; finding that "Eleventh Amendment immunity remains intact for education claims under Title II of the ADA"); *Solley v. Big Spring State Hosp.*, No. 1:03–CV–094–C, 2004 WL 1553423, *4, 2004 U.S. Dist. LEXIS 12958, at *13 (N.D.Tex. July 12, 2004) (granting defendant's motion for partial summary judgment; finding that the Eleventh Amendment bars money damages claims for Family and Medical Leave Act violations).

Some cases merit further attention. In *Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 442 (S.D.N.Y.2004), the Southern District of New York held that an inmate's Title II claim against the city of New York was actionable under *Lane*. The inmate had difficulty walking because of injuries he sustained in an automobile accident. The inmate alleged that the city violated Title II by placing him "in housing that was far from such prison services as the law library and infirmary, thus forcing Plaintiff to walk great distances to use these facilities and causing him great pain due to his medical condition." *Id.* at 441.

In finding that Eleventh Amendment immunity did not apply, the court interpreted *Lane* as "upholding [the] ADA's abrogation of a State's Eleventh Amendment immunity ...." *Id.* at 442. That interpretation exceeds the scope of the Supreme Court's opinion. *Lane* does not say that the ADA abrogated Eleventh Amendment immunity entirely. Instead, the Supreme Court held only that Title II abrogated Eleventh Amendment immunity for claims implicating the "constitutional right of access to the courts." *Lane*, 124 S.Ct. at 1993. *Carrasquillo* does not persuade this Court.

Nor does the Western District of Wisconsin's decision in *Flakes v. Frank*, 322 F.Supp.2d 981 (W.D.Wis.2004). In *Flakes*, the court reconsidered its previous decision denying an inmate's request to proceed with Title II claims against the Secretary of Wisconsin's Department of Corrections. The inmate alleged that the defendant violated Title II by failing to provide various medical services and assistance. *Flakes v. Frank*, No. 04–C189–C, 2004 WL 941208, **4–5, 2004 U.S. Dist. LEXIS 7650, at *11–12 (W.D.Wis. Apr. 30, 2004). The court initially dismissed the inmate's Title II claims based on Seventh Circuit precedent that the ADA did not abrogate Eleventh Amendment immunity with respect to Title I (not Title II) claims. *Flakes*, 322 F.Supp.2d at 982–83. After *Lane*, the court held that "[a]lthough it may be that in the final analysis, I will conclude that [*Lane*]'s narrow scope does not encompass plaintiff's ADA claims, at this stage of the proceedings I cannot say that plaintiff could prove no set of facts entitling him to relief on his ADA claims." *Id.*

Unlike *Flakes*, this Court relies on both *Lane* and Sixth Circuit precedent that squarely addresses Eleventh Amendment

immunity for Title II claims and limits abrogation to Title II claims implicating due process rights. *See Popovich*, 276 F.3d at 811. *Popovich* is consistent with *Lane*'s finding that Title II abrogates Eleventh Amendment immunity to the extent that Title II claims are based on the due process right of access to the courts.

Finally, the Court notes the Ninth Circuit's opinion in *Phiffer v. Columbia River Corr. Inst.*, No. 01–35984, 2004 U.S.App. LEXIS 19152 (9th Cir. Sept. 13, 2004). There, the Ninth Circuit found that its pre-*Lane* decision that Title II entirely abrogates Eleventh Amendment immunity was consistent with *Lane*. The Ninth Circuit based its opinion on pre-*Lane* precedent that Title II abrogated immunity if the claims sound in due process *or* equal protection. *Id.* at *2–4. Because the Ninth Circuit applies a different analysis than the Sixth Circuit precedent that guides this Court, *Phiffer* is not instructive.

■ In light of *Garrett, Popovich*, and *Lane*, the Court finds that Ohio has Eleventh Amendment immunity to Plaintiffs' Title II claims. Plaintiffs' ADA claims against Ohio sound in equal protection, not due process. "[A] Title II claim sounds in due process and abrogates sovereign immunity where the plaintiff alleges that he was excluded from participating in a proceeding guaranteed to him by the Due Process Clause on the basis of his disability." *Robinson v. University of Akron Sch. of Law*, 307 F.3d 409, 413 (6th Cir. 2002).

In their brief, Plaintiffs contend that Ohio violated Title II by (1) sending Plaintiff Rachel Haas to a drug and alcohol treatment facility that did not accommodate persons with disabilities, and (2) failing to provide accommodations for the disabled at the allegedly state-owned building that Quest uses. [Doc. 43 at 11–14]. Plaintiffs do not allege that Ohio denied Rachel Haas any due process protections because of her disability. Plaintiffs' claims against Ohio are essentially that Rachel Haas was treated differently from non-disabled individuals: "[S]he did not receive the same favorable alternative to incarceration as her non-handicapped counterparts." [Doc. 43 at 13]. As such, Plaintiffs' claims sound in equal protection, not due process.

The Court notes that *Lane* expressly limited its abrogation of Eleventh Amendment immunity to Title II claims regarding "the constitutional right of access to the courts." 124 S.Ct. at 1993. The Supreme Court identified other fundamental rights violations that could properly fall within the scope of Title II claims. Plaintiffs' claims do not fit those other categories. Plaintiffs' claims against Ohio do not implicate the right of access to the courts, the right to be present at a trial, the right to a meaningful opportunity to be heard, the right to a trial by jury, or the public's right of access to criminal proceedings. *Id.* at 1988. Plaintiffs' claims against Ohio sound in equal protection, not due process. The Court holds that Title II does not abrogate Ohio's Eleventh Amendment immunity to Plaintiffs' ADA claims.

■ Although courts generally apply the same analysis to claims under the ADA and the Rehabilitation Act, Eleventh Amendment immunity presents an exception. In the Sixth Circuit, it is well-settled that the states waive their Eleventh Amendment immunity to Rehabilitation Act claims by accepting federal funds. *See, e.g., Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir.2001) (citing 42 U.S.C. § 2000d–7). Plaintiffs allege that Ohio ac-

cepts federal funds. ¶ 41.[2] Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Ohio waived its immunity to Rehabilitation Act claims.

### B. Failure To State A Claim

Plaintiffs contend that Ohio violated the ADA and the Rehabilitation Act by denying Rachel Haas access to and participation in services, programs, and activities that Ohio furnished to non-disabled individuals. Ohio says that based on the amended complaint's allegations, Quest is a private agency and is not under Ohio's control. Although the Court agrees that Plaintiffs fail to state a claim against Ohio under the ADA and the Rehabilitation Act for direct disability discrimination, Plaintiffs' Rehabilitation Act claim regarding Ohio's duties as a property owner survives.

To state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir.2003). A plaintiff must allege the same elements to state a claim under the Rehabilitation Act. *Mahon*, 295 F.3d at 589. For purposes of Ohio's Rule 12(b)(6) motion, there are no relevant differences between Title II of the ADA and Section 504 of the Rehabilitation Act. A separate analysis of the Rehabilitation Act claim is unnecessary. *See Jones*, 341 F.3d at 477 n. 3.

Plaintiffs satisfy the first and second elements by alleging that Rachel Haas was a qualified individual with a disability. Ohio does not challenge this allegation.

To satisfy the third element, Plaintiffs must sufficiently allege that Ohio's actions caused Rachel Haas to be excluded from participation in, denied the benefits of, or discriminated against under the Quest program because of her disability. Plaintiffs offer two core allegations. [Doc. 43 at 11–14]. First, Ohio committed "direct disability discrimination" when Judge Kubilus ordered Rachel Haas to confinement in a private facility that lacked accommodations for the disabled. Second, Ohio did not meet its obligations as the owner of the property used by Quest. Ohio responds that Plaintiffs have not linked the alleged discrimination by Quest personnel to the state.

Plaintiffs' "direct disability discrimination" claim does not pass muster. Plaintiffs allege that Judge Kubilus understood the extent of Rachel Haas' injuries when he sentenced her to confinement at Quest's facility, and that the Quest program "offered numerous advantages to the participants over the local jails." ¶¶ 12, 13, 37. Plaintiffs do not sufficiently allege that Ohio denied Rachel Haas access to any of the services that Quest offers to program participants. She met with program counselors and participated actively. ¶ 26. Quest's staff delivered food to her room when she had difficulty getting to the dining facility. ¶ 25. Although the staff allegedly forgot to deliver the food "on several occasions," Plaintiffs do not allege that this resulted from discrimination. *Id.*

To the extent Rachel Haas experienced hardships at the Quest facility, Plaintiffs do not allege that those difficulties resulted from discrimination by the state. Although Haas says that Quest's staff "was rude and abusive," Plaintiffs do not allege that Ohio directed Quest's staff to act in such a manner. ¶ 21. Nor do Plaintiffs

---

**2.** Paragraph references are to the amended complaint, [Doc. 25].

allege that Ohio directed Quest personnel to impede Rachel Haas' access to physical therapy and pain medication. Although Plaintiffs allege that Ohio owned the building that housed the program, they describe Quest as a "private facility." ¶ 33. None of these allegations imply disability discrimination by Ohio. Plaintiffs have not sufficiently pled that Ohio is responsible for Quest's alleged wrongdoing.[3]

Even if Plaintiffs sufficiently alleged their "direct disability discrimination" claim against Ohio, they still would have no claim. Plaintiffs contend that the amended complaint "charges an instrumentality of the State with *directly* violating both the ADA and the Rehabilitation Act." [Doc. 43 at 12] (emphasis in original). Plaintiffs identify Judge Kubilus as the "instrumentality" in question. *Id.* In Plaintiffs' words, "Judge Kubilus was unconcerned with whether Plaintiff was being required to attend a program that was unable to accommodate her readily observable disabilities." *Id.*

■ Judge Kubilus has judicial immunity for his sentencing decision. "A judge performing his judicial functions is absolutely immune from suit seeking monetary damages." *Johnson v. Turner,* 125 F.3d 324, 333 (6th Cir.1997). "Immunity is available even if a judge acts erroneously, corruptly, or in excess of his jurisdiction." *Id.* Plaintiffs' dissatisfaction with Judge Kubilus's decision does not provide a cause

of action against Ohio. *See Saint–Fleur v. City of New York,* No. 99–CIV–10433, 2000 WL 280328, *5, 2000 U.S. Dist. LEXIS 8814, at *18 (S.D.N.Y. Mar. 14, 2000) ("To the extent that [the plaintiff's] claim against the State is, in reality, an attempt to sue state court judges for damages, his claims are barred."). Plaintiffs fail to state a claim against Ohio for direct disability discrimination under the ADA and the Rehabilitation Act.

Plaintiffs fare better on their claim regarding Ohio's obligations as the owner of the property. Plaintiffs allege that Ohio owns the Quest facility. ¶ 14. In *Johnson v. City of Saline,* 151 F.3d 564, 571 (6th Cir.1998), the Sixth Circuit addressed the obligations of property owners under Title II and the Rehabilitation Act and held that "public entities have a duty to provide accessible facilities even when those facilities are used by contractors." As in *Johnson,* "[Ohio] definitely is a landlord, required by Title II to reasonably accommodate the disabled public." *Id.* at 572.

■ At this stage, the Court cannot rule as a matter of law that Ohio met its obligations as owner of the property. The Court notes that the accessibility requirements are "subject to the bounds of reasonableness." *Id.* at 571. After the completion of discovery, Ohio may very well come forward with evidence that it has taken reasonable steps to provide disabled access to the facility, or that "making the

---

3. In *Johnson v. City of Saline,* 151 F.3d 564 (6th Cir.1998), the Sixth Circuit identified four factors it will consider in the Title II context to determine whether to view a facility as an arm of the state:
    1) Whether the entity is operated with public funds;
    2) Whether the entity's employees are considered government employees;
    3) Whether the entity receives significant assistance from the government by provision of property or equipment; and

4) Whether the entity is governed by an independent board selected by members of a private organization or a board elected by the voters or appointed by elected officials. *Id.* at 572. At most, Plaintiffs allege that Ohio assisted Quest by providing access to the state-owned building. Plaintiffs offer no allegations regarding the status of Quest's employees, Quest's sources of funding, or the composition of Quest's board of directors.

modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Because Ohio has Eleventh Amendment immunity to Plaintiffs' ADA claims, only the Rehabilitation Act claim on this issue survives.

### C. Leave To Amend

Plaintiffs request leave to file another amended complaint. Plaintiffs have already filed two complaints in this action. The dispositive discovery deadline is September 23, 2004. The dispositive motion deadline is September 30, 2004. Under these circumstances, the Court finds that Plaintiffs' request is untimely and would impose undue hardship on the other parties. *See Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1124 (6th Cir.1989). Additionally, amendment would not cure the legal flaws of the dismissed claims.

### IV. Conclusion

For these reasons, this Court dismisses Plaintiffs' ADA claims against Defendant Ohio in their entirety under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The Court also dismisses Plaintiffs' Rehabilitation Act claim against Ohio for direct disability discrimination under Rule 12(b)(6). Plaintiffs' Rehabilitation Act claim against Ohio for failure to comply with disabled accessibility requirements may proceed. The Court denies Plaintiffs' request for leave to amend.

IT IS SO ORDERED.