******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# OMAR J. MILLER *v.* JON DOE ET AL.
## (AC 43845)

Bright, C. J., and Alvord and Norcott, Js.

*Syllabus*

The plaintiff, an inmate in a state correctional institution, sought to recover
damages from the defendant M, an employee of the Department of
Correction, in his individual capacity, pursuant to federal law (42 U.S.C.
§ 1983), for the alleged violation of his federal constitutional rights in
connection with a motor vehicle accident during which he sustained
injuries. The plaintiff, who was being transported to and from a medical
appointment in a vehicle operated by M, was placed in full restraints
in the rear seat of the vehicle, in which there was not enough room for
the plaintiff to sit upright. The plaintiff informed M that the vehicle was
too small, but M said that he could not obtain a larger vehicle. The
plaintiff did not ask M to secure his seat belt, and M did not check to
see if the seat belt was fastened. On the return trip, M drove erratically
and in excess of the speed limit, ultimately colliding with another vehicle.
The plaintiff alleged that M had violated his civil rights under the eighth
amendment to the United States constitution, claiming that M's failure
to abide by reasonable safety standards while transporting him gave
rise to a claim of deliberate indifference. The trial court denied M's
motion for summary judgment, finding that there was a disputed question
of fact as to whether M knew and was indifferent to an excessive risk
to the plaintiff's health and safety. On M's appeal to this court from the
denial of his motion for summary judgment, *held* that the trial court
erred in holding that M was not entitled to qualified immunity, as the
allegations in the plaintiff's complaint and the record before the court
did not give rise to a claim for deliberate indifference because no federal
precedent clearly established that M's conduct violated the eighth
amendment constitutional right against cruel and unusual punishment:
the Court of Appeals for the Second Circuit, in *Jabbar* v. *Fischer* (683
F.3d 54), held that the failure of prison officials to provide inmates with
seat belts does not, without more, violate the eighth amendment, and
other federal courts have held the same and largely have held that
dangerous road conditions, distracted driving and speeding while trans-
porting inmates do not give rise to a claim for deliberate indifference;
moreover, in the few instances in which a federal court has found
that a constitutional violation occurred during the transportation of an
inmate, the plaintiff typically has alleged that he was not seat belted,
the defendant purposefully drove in a reckless manner and the plaintiff
asked the defendant to fasten his seat belt or to drive more safely but
the defendant ignored the requests, and, in the present case, the plaintiff
neither alleged nor presented evidence that he requested to be seat
belted, requested that M drive more safely or requested that M obtain
a larger vehicle for safety rather than for comfort; furthermore, M's
conduct was not severe enough to constitute an obvious constitutional
violation in the absence of clearly established law, as the present case
involved a motor vehicle accident with circumstances under which no
federal court has found an eighth amendment violation.

Argued March 9—officially released July 26, 2022

*Procedural History*

Action to recover damages for the alleged violation
of the plaintiff's federal constitutional rights, and for
other relief, brought to the Superior Court in the judicial
district of Hartford, where the court, *Elgo, J.*, denied
the motion to dismiss filed by the defendant Joshua
Medina; thereafter, the court, *Moukawsher, J.*, denied
the motion for summary judgment filed by the defen-
dant Joshua Medina, and the defendant Joshua Medina

appealed to this court. *Reversed; judgment directed.*

*Janelle R. Medeiros*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellant (defendant Joshua Medina).

*Omar J. Miller*, self-represented, the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. The defendant Joshua Medina, a central transportation unit officer for the Department of Correction (department), appeals from the trial court's denial of his motion for summary judgment in the action brought by the self-represented plaintiff, Omar J. Miller, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference in violation of the eighth amendment to the United States constitution.[1] On appeal, the defendant claims that the court improperly denied his motion for summary judgment because he is entitled to qualified immunity from the plaintiff's claim.[2] We agree and, accordingly, reverse the judgment of the trial court.

The record before the court, when viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. At the time of the events underlying the present case, the plaintiff was an incarcerated inmate in the custody of the department at the MacDougall-Walker Correctional Institution (MacDougall-Walker) in Suffield.[3] On July 3, 2013, the plaintiff was transported by the defendant from MacDougall-Walker to the University of Connecticut's Jack Dempsey Hospital (hospital) in Farmington for a medical appointment. Prior to the trip, the defendant placed the plaintiff in full restraints, which included "handcuffs, leg irons, a belly chain, a tether chain, and a 'black box.' "[4]

After the defendant placed those restraints on the plaintiff, the defendant escorted him outside to a Ford Crown Victoria motor vehicle (vehicle), which had been assigned to the defendant for the plaintiff's transportation. The defendant did not choose that particular vehicle or have the authority or ability to obtain a different vehicle. The vehicle had been modified to include a metal barrier between the front and rear seats. Because of that barrier, there was not enough space for the plaintiff to sit upright in the rear seat. Upon seeing the vehicle's modified interior, the plaintiff informed the defendant that the vehicle was too small, but the defendant told him just to lie down on the rear seat instead of sitting upright. The plaintiff then asked the defendant if he could get a larger vehicle, to which the defendant responded, "No," and again told the plaintiff to lie down on the rear seat, which he did.

Once in the vehicle, the plaintiff was unable to put his seat belt on because of his restraints and how he was forced to lie on the rear seat. The defendant never checked to see if the plaintiff's seat belt was fastened or offered to fasten his seat belt, despite a department policy that requires inmates to be seat belted during transit. The plaintiff also never asked the defendant to secure his seat belt.

While traveling to the hospital, the defendant exceeded the speed limit, but he and the plaintiff reached the

hospital without incident. After the plaintiff's appointment, he was placed in the same vehicle and again lay down on the rear seat. During the trip back to MacDougall-Walker, the defendant drove "erratically" by weaving in and out of traffic, making sharp turns, and, at one point, driving thirty miles per hour above the speed limit. The plaintiff never commented on the defendant's driving or asked him to slow down.

While traveling along Route 159 in Windsor Locks, the defendant noticed a car ahead at the traffic light that had stopped in both the left and right lanes and appeared to be attempting to make a left hand turn from the right lane. The defendant thought that there was enough room for him to continue straight in the right lane and slip past the stopped car. He was mistaken, however, and struck the right rear side of the stopped car. During the collision, the plaintiff was launched into the metal barrier and lost consciousness. After he regained consciousness, "his body was wedged between the [rear] seat and the metal barrier and his head was pinned between the metal barrier and the [vehicle] door."

Immediately after the crash, the defendant called emergency services and department personnel, who quickly responded to the scene of the accident. The defendant then checked on the driver of the other car[5] and the plaintiff. According to the defendant's evaluation of the plaintiff, the plaintiff was not at risk of immediate harm. The plaintiff later was transported by ambulance to Hartford Hospital so that he could receive medical treatment for the injuries he had suffered in the crash. According to the plaintiff, the accident caused injuries and pain to his head, neck, back, knee, and shoulder.

Thereafter, on September 12, 2013, the plaintiff filed a complaint against the defendant and Jon Doe; see footnote 1 of this opinion; alleging that the defendant had violated the plaintiff's civil rights under the eighth amendment to the United States constitution.[6] Specifically, the plaintiff claimed that the defendant and Doe's failure to abide by reasonable safety standards while transporting him gave rise to a claim for deliberate indifference pursuant to § 1983.[7] On January 23, 2014, the plaintiff filed an amended complaint. The defendant then filed a request for the plaintiff to revise his complaint, wherein he asked him to "[s]eparate [the] claims against each defendant into separate counts." On June 23, 2014, in accordance with that request to revise, the plaintiff filed the operative complaint,[8] in which he alleged in relevant part that the defendant had acted with deliberate indifference to his safety while transporting him from the hospital to MacDougall-Walker (count two).[9] That claim was brought against the defendant in his individual capacity.

The defendant then filed a motion to dismiss, alleging

that the plaintiff's claim was "barred by qualified immunity" because the allegations in the operative complaint did not establish that the defendant had violated clearly established law, given that federal precedent does not require an inmate to be seat belted during transit. The plaintiff opposed the defendant's motion to dismiss, arguing that the defendant had violated his constitutional right to be free from cruel and unusual punishment when the defendant's "reckless behavior led to [the plaintiff] being subjected [to] physical harm when [the defendant] was 'driving erratically and in excess of speed limits.'" The plaintiff further argued that, because he had sued the defendant in his individual capacity, qualified immunity did not apply.

On May 5, 2017, by way of a memorandum of decision, the court, *Elgo*, *J.*, denied the defendant's motion to dismiss after finding that the plaintiff had "alleged sufficient facts to support the claim that it was not objectively reasonable for the defendant to believe his acts were lawful." The court specifically held: "[T]he plaintiff has . . . meticulously and carefully alleged that the defendant was not only aware of the risk of harm to the plaintiff but then disregarded that risk by acting with deliberate indifference to his physical safety, specifically in his failure to abide by [department] administrative directives requiring [seat belts]. . . . Given the allegations that the defendant knew that the plaintiff would be at serious risk of injury in the event of a collision, given that the defendant was alleged to be aware of the requirement that inmates must be seat belted, and given the allegations that the defendant drove erratically and unsafely while the plaintiff was not safely secured, this court concludes that the plaintiff's action is not barred by qualified immunity." (Internal quotation marks omitted.)

On May 25, 2017, the defendant filed a motion for reconsideration of the court's denial of his motion to dismiss, reiterating his claim that he had not violated a clearly established right and was thus entitled to qualified immunity. In a memorandum of decision dated November 24, 2017, the court granted the defendant's motion for reconsideration but again denied the defendant's motion to dismiss.

In its memorandum of decision, the court specifically addressed the defendant's contention that he had not violated a clearly established constitutional right, stating: "Although there were no published decisions from the [United States Court of Appeals for the] Second Circuit addressing [the] specific factual situation [in the present case] at the time of the alleged conduct . . . the absence of case law directly on point is not dispositive." The court then held, based largely on precedent from the Eighth Circuit, that the plaintiff's complaint sufficiently alleged "a violation of a clearly established constitutional right—namely, that prison employees

may not subject an inmate to a substantial risk of serious harm while transporting them in a vehicle. Given that the plaintiff has alleged that the defendant drove erratically and recklessly, notwithstanding the defendant's knowledge of regulations requiring seat belts as well as the plaintiff's expressed concern for his safety, the court concludes that the defendant is not entitled to qualified immunity.''

Thereafter, the defendant filed a motion for summary judgment, wherein he again argued that he was entitled to qualified immunity because he had not violated a clearly established constitutional right.[10] The plaintiff filed an objection to the defendant's motion for summary judgment, arguing that the defendant was not entitled to qualified immunity because (1) he was being sued in his personal capacity, not his official capacity, and (2) his failure to follow department policies when transporting the plaintiff demonstrated the defendant's deliberate indifference to the plaintiff's health and safety.

On January 13, 2020, the court, *Moukawsher, J.*, held a hearing on the defendant's motion for summary judgment. At the hearing, the defendant argued that summary judgment was proper because he was entitled to qualified immunity on the plaintiff's deliberate indifference claim, given that he had not violated a clearly established right and that "the circumstances [in the present case do not] rise to the level of an obvious excessive risk to the plaintiff's safety." In response, the plaintiff argued that the defendant's actions constituted deliberate indifference because the defendant had put the plaintiff in the vehicle fully shackled and without a seat belt and then had driven "fast and erratically."[11]

After the hearing, the court denied the defendant's motion for summary judgment from the bench, stating: "I find that there's a disputed question of fact as to whether the officer knew and was indifferent to an excessive risk to the inmate's health and safety. And for those reasons, summary judgment [is] denied." The court further explained its decision in a written ruling that was issued the same day: "[T]here is a genuinely disputed question of fact as to whether the officer knew and was indifferent to an excessive risk to the inmate's health and safety. A reasonable jury could believe such was the case. If it does, any immunity claim would . . . fail as a matter of law and reckless conduct would be proved." The court did not, in either its oral or written ruling, analyze whether the plaintiff had alleged a constitutional right that was clearly established at the time of the challenged conduct. The defendant then appealed from the court's denial of his motion for summary judgment.

We begin by setting forth the applicable standards of review. "The standard of review of a trial court's [ruling on] summary judgment is well established. Prac-

tice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to [deny] the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 679–80, 267 A.3d 766 (2021). Moreover, "[w]hether an official is entitled to qualified immunity presents a question of law that must be resolved de novo on appeal." *Fleming* v. *Bridgeport*, 284 Conn. 502, 518, 935 A.2d 126 (2007).

We now set forth the relevant law with regard to qualified immunity. "[A] claim for qualified immunity from liability for damages under § 1983 raises a question of federal law . . . and not state law. Therefore, in reviewing these claims of qualified immunity we are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials. . . . Furthermore, in applying federal law in those instances where the United States Supreme Court has not spoken, we generally give special consideration to decisions of the Second Circuit . . . ." (Internal quotation marks omitted.) *Morgan* v. *Bubar*, 115 Conn. App. 603, 625, 975 A.2d 59 (2009).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson* v. *Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "[The] standard for determining whether an officer is entitled to qualified immunity . . . is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." (Internal quotation marks omitted.) *Amore* v. *Novarro*, 624 F.3d 522, 530 (2d Cir. 2010). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (Internal quotation marks omitted.) *Braham* v. *Newbould*, 160 Conn. App. 294, 302, 124 A.3d 977 (2015); see also *Morgan* v. *Bubar*, supra, 115 Conn. App. 625 ("[q]ualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or consti-

tutional rights of which a reasonable person would have known" (internal quotation marks omitted)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson* v. *Callahan*, supra, 236; see also *Edrei* v. *Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (plaintiff's "[f]ailure to establish either prong" entitles defendant to qualified immunity), cert. denied,    U.S.    , 139 S. Ct. 2614, 204 L. Ed. 2d 263 (2019). In this opinion, we focus on the second prong of the test, namely, whether the alleged constitutional right was clearly established at the time of the defendant's conduct.

"To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. . . . Even if [the Second Circuit] or other circuit courts have not explicitly held a . . . course of conduct to be unconstitutional, the unconstitutionality of that . . . course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue . . . even if those decisions come from courts in other circuits . . . ." (Citations omitted; internal quotation marks omitted.) *Scott* v. *Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). "Courts do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." (Internal quotation marks omitted.) *Walker* v. *Schult*, 717 F.3d 119, 125–26 (2d Cir. 2013). Moreover, "[t]he right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense." (Internal quotation marks omitted.) *Anderson* v. *Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); see also *White* v. *Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ("clearly established law should not be defined at a high level of generality"). "If an official's conduct did not violate a clearly established constitutional right . . . then he is protected by qualified immunity." *Walker* v. *Schult*, supra, 126.

We next set forth the relevant law with regard to the eighth amendment and deliberate indifference, on which the plaintiff's § 1983 claim is based. "The [e]ighth [a]mendment's prohibition against cruel and unusual punishment requires prison conditions to be humane, though not necessarily comfortable." (Internal quotation marks omitted.) *Jabbar* v. *Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). "A denial of safe and humane conditions can result from an officer's deliberate indifference to a prisoner's safety." *Brown* v. *Fortner*, 518 F.3d 552,

558 (8th Cir. 2008). "[D]eliberate indifference includes both subjective and objective components. First, the alleged deprivation must be, in objective terms, sufficiently serious. . . . Second, the [government official] must act with a sufficiently culpable state of mind. . . . An official acts with . . . deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (Internal quotation marks omitted.) *Braham* v. *Newbould*, supra, 160 Conn. App. 302–303. "Deliberate indifference requires more than mere negligence, but does not require acting for the very purpose of causing harm or with knowledge that harm will result. . . . [A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Fortner*, supra, 558.

In the operative complaint, the plaintiff claims that the defendant violated his constitutional rights under the eighth amendment when the defendant subjected him to cruel and unusual punishment by transporting him in reckless disregard of reasonable safety standards, including by (1) failing to fasten the plaintiff's seat belt, despite the defendant's knowledge that department policy required inmates to be seat belted, (2) refusing to acquire a larger vehicle in which the plaintiff could sit properly, and (3) driving erratically and well in excess of the speed limit.[12] Given that the plaintiff brings this claim pursuant to § 1983, and not state common law,[13] we must determine whether it is clearly established under federal law that such conduct violates the constitution. See *Morgan* v. *Bubar*, supra, 115 Conn. App. 625. Accordingly, we begin with an overview of federal case law concerning the transportation of inmates.

Very few cases from either the United States Supreme Court or the Second Circuit have resolved constitutional questions involving inmates and vehicles. Indeed, the sole relevant case is *Jabbar* v. *Fischer*, supra, 683 F.3d 58–59. In *Jabbar*, the plaintiff, an incarcerated inmate, was transported to and from a medical appointment on a " 'hub bus' that did not have seatbelts for inmate[s]" while "shackled from his wrists to his ankles." Id., 56. While in transit, "[t]he bus made a forceful turn and [the plaintiff] . . . was thrown from his seat. He hit his head on another seat and was knocked unconscious. He sustained injuries to his face, head, and back." Id. Thereafter, the plaintiff sued the defendants, "contending that their failure to provide a bus seatbelt violated his [e]ighth . . . [a]mendment rights." Id. The defendants filed a motion to dismiss in the United States District Court for the Southern District of New York, arguing that the failure to provide

inmates with seat belts does not violate the constitution, which the District Court granted. Id. The plaintiff then appealed to the Second Circuit. Id.

On appeal, the Second Circuit concluded that "the failure of prison officials to provide inmates with seatbelts does not, without more, violate the [eighth amendment]" because "the failure to provide a seatbelt is not . . . sufficiently serious to constitute an [e]ighth [a]mendment violation . . . [and] because the absence of seatbelts on inmate bus transport is itself not an excessive risk, without more, deliberate indifference—that is, that defendants knew of, and disregarded, an excessive risk to inmate safety—cannot be plausibly alleged." (Citations omitted; internal quotation marks omitted.) Id., 58. This holding arguably left open the possibility that conduct in addition to failing to provide inmates with seat belts could give rise to a constitutional violation, but the Second Circuit did not, and still had not at the time of the challenged conduct in the present case, elaborated on what specific additional conduct would constitute a violation of the eighth amendment.

Other federal courts overwhelmingly have held that the failure to provide an inmate with a seat belt does not, on its own, give rise to a constitutional claim for deliberate indifference. See, e.g., *Dexter* v. *Ford Motor Co.*, 92 Fed. Appx. 637, 643 (10th Cir. 2004) ("failure to seatbelt an inmate does not violate the [c]onstitution"); *Spencer* v. *Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999) (same), cert. denied sub nom. *Spencer* v. *Board of Police Commissioners*, 528 U.S. 1157, 120 S. Ct. 1165, 145 L. Ed. 2d 1076 (2000); *Daily* v. *CCA-WCFA Whiteville Transportation Officers*, United States District Court, Docket No. 3:18-CV-0146 (WLC) (M.D. Tenn. April 2, 2018) (listing federal cases that have held that transporting inmates without seat belts does not amount to deliberate indifference); see also *Dexter* v. *Ford Motor Co.*, supra, 641 ("The risk of a motor vehicle accident is dependent upon a host of factors unrelated to the use of seatbelts, viz., vehicular condition, time of day, traffic, signage, warning lights, emergency circumstances, weather, road conditions, and the conduct of other drivers. The eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted.").

Although at the time of the challenged conduct, the Second Circuit had considered only whether the failure to provide inmates with seat belts gave rise to a constitutional violation, other federal courts had considered whether factual scenarios involving inmates and a lack of seat belts in addition to other factors, including dangerous road conditions, distracted driving, and speeding, gave rise to a claim for deliberate indifference. Those courts largely have held that such facts do not amount to a violation of the eighth amendment.

For example, in *Carrasquillo* v. *New York*, 324 F. Supp. 2d 428, 434 (S.D.N.Y. 2004), the plaintiff, an incarcerated inmate, brought a § 1983 claim for deliberate indifference after he was injured while being transported to a courthouse. The plaintiff alleged that the defendant's conduct gave rise to a constitutional violation because the plaintiff "was handcuffed and was not provided with a seatbelt" and, during transit, the defendant "was traveling at an excessive [rate of] speed . . . despite icy conditions." (Internal quotation marks omitted.) Id. The United States District Court for the Southern District of New York concluded that the alleged conduct did not amount to deliberate indifference and dismissed the plaintiff's claim, holding that (1) the constitution does not guarantee an inmate's "right to non-negligent driving by government employees," (2) "[a]llegations of a public official driving too fast for the road conditions are grounded in negligence," and (3) "[the] failure to provide seatbelts to prisoners is not a constitutional violation . . . ." (Internal quotation marks omitted.) Id., 436–37.

Most other federal courts that have considered the lack of an inmate's seat belt along with certain additional conduct have reached the same conclusion: such conduct does not violate the constitution. See, e.g., *Daily* v. *CCA-WCFA Whiteville Transportation Officers*, supra, United States District Court, Docket No. 3:18-CV-0146 (WLC) (inmate's allegations that defendant failed to fasten inmate's seat belt, drove ninety miles per hour, followed other cars too closely, and was distracted by his cell phone did not constitute deliberate indifference); *Uhl* v. *Wendy*, United States District Court, Docket No. 15 CV 6923 (VB) (S.D.N.Y. December 9, 2016) (inmate's allegations that defendant "failed to secure a safety belt around [him] and drove in excess of [seventy-five] to [eighty] miles per hour" were "insufficient to state a claim under [§] 1983"); *Byerlein* v. *Hamilton*, United States District Court, Docket No. 1:09-CV-841 (PLM) (W.D. Mich. October 7, 2009) (allegations that defendant failed to fasten plaintiff's seat belt, talked on cell phone, and disregarded warning sign about icy conditions did not violate eighth amendment).

In the few instances in which a federal court has found that a constitutional violation occurred during the transportation of an inmate, the plaintiff typically has alleged that (1) he was not seat belted, (2) the defendant purposefully drove in a reckless, fast, and distracted manner, *and* (3) he asked the defendant either to fasten his seat belt or to drive more safely, but the defendant ignored such requests. To demonstrate, in *Brown* v. *Fortner*, supra, 518 F.3d 556, on which Judge Elgo relied in denying the defendant's motion to dismiss, the plaintiff, an incarcerated inmate, brought a § 1983 deliberate indifference claim against the driver of a prison van after he was injured while being trans-

ported to another correctional facility. Id. The plaintiff alleged that he was fully shackled, which left him unable to secure his own seat belt without assistance. Id. Because of this, the plaintiff asked the defendant to fasten his seat belt but he refused "and instead replied with taunts." Id. "Other inmates [being transported with the plaintiff] also requested seatbelts and were rebuffed." Id. The plaintiff further alleged that the defendant "[drove] in excess of the speed limit, follow[ed] too closely to the lead van, cross[ed] over double-yellow lines, and pass[ed] non-convoy cars when the road markings clearly prohibited doing so. Further, [the plaintiff] presented evidence showing that the inmates riding in [the defendant's] van asked him to slow down, and [that the defendant] ignored their requests." Id., 559. The defendant moved for summary judgment, which the United States District Court for the Western District of Missouri denied. Id., 557.

On appeal, the Eighth Circuit affirmed the District Court's denial of the defendant's motion for summary judgment, holding that, on the basis of the uncontested evidence, "a reasonable jury could conclude that there was a substantial risk of harm to [the plaintiff] and that [the defendant] knew of and disregarded the substantial risk [of] harm. As such, [the plaintiff] has presented sufficient evidence that [the defendant's] actions may have violated the [e]ighth [a]mendment prohibition against cruel and unusual punishment." Id., 560.

Other federal courts, when confronted with situations where an inmate either requested to be seat belted or asked that a defendant stop driving recklessly, have reached the same conclusion. See, e.g., *Rogers* v. *Boatright*, 709 F.3d 403, 408 (5th Cir. 2013) (claim of deliberate indifference could survive sua sponte dismissal and was not frivolous when officer did not provide inmate with seat belt despite being aware of repeated past incidents where unseatbelted inmates were injured);[14] *Brown* v. *Morgan*, United States Court of Appeals, Docket No. 94-2023, 1994 WL 610993, *1 (8th Cir. 1994) (unpublished decision) (claim of deliberate indifference sufficiently stated when officer refused to let inmate wear seat belt, drove at high rate of speed in bad weather, and laughed at and ignored inmate's request to slow down); *Steele* v. *Ayotte*, United States District Court, Docket No. 3:17-CV-1370 (CSH) (D. Conn. February 6, 2018) (relying on Judge Elgo's memorandum of decision denying department's motion to dismiss to determine that claim of deliberate indifference was sufficiently stated when officers used cell phones while driving and denied inmate's request to have seat belt fastened, stating, "Why would you need a seatbelt; you don't believe in my driving" (internal quotation marks omitted)); *Williams* v. *Wisconsin Lock & Load Prisoner Transports, LLC*, United States District Court, Docket No. 15 C 8090 (RWG) (N.D. Ill. August 3, 2016) (claim of deliberate indifference sufficiently stated where

"[officer] refused [inmate's request] to properly secure his seat belt, drove too fast for the weather conditions, improperly used his cell phone while driving, and slammed on the van's breaks to avoid a collision caused by his inattention" (footnote omitted)); *Barela* v. *Romero*, United States District Court, Docket No. CIVIL 06-41 (JBDJS) (D.N.M. May 10, 2007) (eighth amendment violation sufficiently stated when officer transported fully shackled inmate without seat belt, drove erratically at high speeds, and ignored and laughed at inmate's requests to stop).

Given our review of the relevant federal case law and the particular facts of the present case—specifically, that (1) the plaintiff was not seat belted, (2) the defendant refused to acquire a larger vehicle, and (3) the defendant drove erratically and exceeded the speed limit—we conclude that the allegations in the plaintiff's complaint and the record before the court in connection with the defendant's motion for summary judgment do not give rise to a claim for deliberate indifference because no federal precedent clearly establishes that the defendant's conduct violates the constitution.[15]

First, neither the United States Supreme Court nor the Second Circuit has ever concluded that transporting an inmate without a seat belt, in a car that is too small, and while driving erratically and in excess of the speed limit violates the eighth amendment. Indeed, to the contrary, the Second Circuit explicitly has held that transporting an inmate without a seat belt is not deliberate indifference. See *Jabbar* v. *Fischer*, supra, 683 F.3d 58–59. Although *Jabbar* implied that conduct in addition to the failure to provide an inmate with a seat belt could give rise to a constitutional violation, such general language cannot be read as creating a clearly established right for inmates to be seat belted and transported in accordance with safety protocols. See *Anderson* v. *Creighton*, supra, 483 U.S. 640 (1987) ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). Moreover, and contrary to the court's conclusion when denying the defendant's motion to dismiss, the fact that *Jabbar* v. *Fischer*, supra, 58, cites to *Brown* v. *Fortner*, supra, 518 F.3d 559–62, wherein the Eighth Circuit held that the defendant's conduct while transporting the plaintiff gave rise to a constitutional violation, does not clearly establish the constitutional violation alleged in the present case. See *Jermosen* v. *Smith*, 945 F.2d 547, 551 (2d Cir. 1991) (declining to rely on dicta when determining whether right was clearly established), cert. denied, 503 U.S. 962, 112 S. Ct. 1565, 1181 L. Ed. 2d 211 (1992). As noted previously in this opinion, the facts in *Fortner* were much more egregious than those alleged by the plaintiff in the present case. In particular, in the present case, the plaintiff neither alleged nor presented evidence that he requested to be seat belted or requested that the

defendant slow down or drive more cautiously. There is also no evidence that the plaintiff's request that the defendant procure a larger vehicle was made because of a concern for safety instead of comfort. Consequently, the Second Circuit's reference to *Fortner* does not support a conclusion that it would hold that the defendant's conduct in the present case is a clear violation of the plaintiff's eighth amendment rights. Overall, the Second Circuit's precedent regarding the transporting of inmates in vehicles does not clearly establish that the defendant's conduct in the present case violated the plaintiff's constitutional rights.

Second, no other federal courts that have considered factual situations similar to those at issue here have concluded that such facts give rise to a constitutional violation. See *Weber* v. *Dell*, 804 F.2d 796, 801 n.6, 803–804 (2d Cir. 1986) (relying on decisions from other circuits finding similar conduct unconstitutional, even though Second Circuit had not reached issue), cert. denied sub nom. *Monroe* v. *Weber*, 483 U.S. 1020, 107 S. Ct. 3263, 97 L. Ed. 2d 762 (1987). In the present case, the plaintiff alleged that the defendant drove in disregard of the plaintiff's safety by driving thirty miles per hour in excess of the speed limit, making sharp turns, and weaving in and out of traffic, all while the plaintiff was seated in a vehicle that was too small for his stature and was unsecured by a seat belt. Federal courts that have had the opportunity to consider similar facts, however, overwhelmingly have concluded that such conduct does not constitute deliberate indifference. See *Carrasquillo* v. *New York*, supra, 324 F. Supp. 2d 433–34 (no deliberate indifference when defendant drove above speed limit in icy conditions with inmate handcuffed and not seat belted); see also, e.g., *Daily* v. *CCA-WCFA Whiteville Transportation Officers*, supra, United States District Court, Docket No. 3:18-CV-0146 (WLC) (no deliberate indifference when defendant drove ninety miles per hour while "blasting" music and "fumbling with his phone" with inmate handcuffed and not seat belted); *Byerlein* v. *Hamilton*, supra, United States District Court, Docket No. 1:09-CV-841 (PLM) (no deliberate indifference when defendant drove above speed limit on icy road with inmate handcuffed and not seat belted).

In fact, in many of these cases, the defendant's conduct was arguably worse than the conduct at issue here, given that the defendants in those cases drove erratically in bad weather or were distracted while driving. See *Daily* v. *CCA-WCFA Whiteville Transportation Officers*, supra, United States District Court, Docket No. 3:18-CV-0146 (WLC); *Byerlein* v. *Hamilton*, supra, United States District Court, Docket No. 1:09-CV-841 (PLM); *Carrasquillo* v. *New York*, supra, 324 F. Supp. 2d 433–34. Despite that worse conduct, though, each court still concluded that such conduct did not constitute deliberate indifference. See *Daily* v. *CCA-WCFA*

*Whiteville Transportation Officers*, supra, United States District Court, Docket No. 3:18-CV-0146 (WLC); *Byerlein* v. *Hamilton*, supra, United States District Court, Docket No. 1:09-CV-841 (PLM); *Carrasquillo* v. *New York*, supra, 433–34. Thus, this persuasive authority also does not clearly establish that the defendant's conduct in the present case violated the plaintiff's constitutional rights.

On the other hand, as noted previously in this opinion, the cases on which the plaintiff relies that have reached the contrary conclusion are readily distinguishable from the present case. In those instances in which a federal court has held that a defendant's conduct while transporting an inmate constituted deliberate indifference, the inmate either asked to be seat belted or asked the officer to slow down or stop, thereby putting the defendant on notice of the danger to which the plaintiff felt exposed, or involved officers who personally knew of recent injuries to inmates that had resulted from the inmates not being seat belted. See, e.g., *Rogers* v. *Boatright*, supra, 709 F.3d 408 (claim of deliberate indifference could survive dismissal, even when inmate did not request to be seat belted, when officer knew of recent prior injuries to inmates who were not seat belted); *Brown* v. *Fortner*, supra, 518 F.3d 556 (defendant ignored inmates' requests to have seat belts fastened and to drive more safely); *Brown* v. *Morgan*, supra, 1994 WL 610993, *1 (defendant ignored inmate's request to be seat belted, ignored inmate's pleas to slow down, and laughed when he saw inmate was scared); *Steele* v. *Ayotte*, supra, United States District Court, Docket No. 3:17-CV-1370 (CSH) (defendants ignored inmate's request to be seat belted); *Williams* v. *Wisconsin Lock & Load Prisoner Transports, LLC*, supra, United States District Court, Docket No. 15 C 8090 (RWG) (defendant refused to fasten inmate's seat belt after inmate asked why he was not belted); *Barela* v. *Romero*, supra, United States District Court, Docket No. CIVIL 06-41 (JBDJS) (defendant, who was speeding and stopping suddenly, ignored inmate's request to stop and laughed at inmate). In the present case, the plaintiff never asked the defendant to fasten his seat belt or commented on his driving. See *Walker* v. *Schult*, supra, 717 F.3d 125 (official must be actually aware of risk).

Further, as the plaintiff admitted at oral argument before this court, he never alleged a safety concern as to the defendant's conduct. See id. There is also no evidence that the plaintiff ever told the defendant that his concern that the assigned vehicle was too small for him was related to any safety concern. Accordingly, because the plaintiff never made the defendant aware of any concerns that he had as to his safety, the present case is distinguishable from the federal cases that have found a constitutional violation based on a defendant's conduct while transporting an inmate. Thus, those cases also do not clearly establish that the defendant's con-

duct in the present case violated a constitutional right.

Consequently, because no federal case has held that facts similar to those alleged in the present case amount to deliberate indifference, we cannot say that the defendant violated a clearly established right when he transported the plaintiff without a seat belt in a vehicle that was too small and drove over the speed limit while making sharp turns and dipping in and out of traffic. See id., 125–26 (in determining whether conduct violates clearly established law, "existing precedent must have placed the . . . constitutional question beyond debate" (internal quotation marks omitted)).

Our conclusion that federal law does not clearly establish the right at issue in the present case, however, does not end our qualified immunity analysis. As the plaintiff notes in his brief, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope* v. *Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). In rare cases, a court can conclude that a defendant's conduct rises to the level of a constitutional violation despite the fact that existing precedent has not yet held that the conduct in question is unlawful. See id.; see also *United States* v. *Lanier*, 520 U.S. 259, 271, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997).

For example, in *Hope* v. *Pelzer*, supra, 536 U.S. 734–35, the United States Supreme Court concluded that the defendants' conduct, namely, handcuffing an inmate to a hitching post in the hot sun for multiple hours while denying him water and bathroom breaks and taunting him, was a clear and obvious violation of the eighth amendment, despite the lack of precedent involving similar facts. Similarly, in *Taylor* v. *Riojas*,     U.S.   , 141 S. Ct. 52, 53, 208 L. Ed. 2d 164 (2020), an inmate spent six days in two different cells, the first of which was covered "in massive amounts of feces" and the second of which was frigidly cold and overflowing with raw sewage. (Internal quotation marks omitted.) The Supreme Court held that the inmate had an obvious constitutional right to be free from "deplorably unsanitary conditions," despite the lack of precedent concerning similar facts, because "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house [the inmate] in such deplorably unsanitary conditions for such an extended period of time." Id., 53–54.

The plaintiff thus argues that, despite the lack of any precedent finding a constitutional violation in situations similar to those alleged here, we still can conclude that the defendant's conduct in the present case constitutes deliberate indifference. We are not persuaded. The facts alleged here—specifically, that the plaintiff was injured in a car accident after the defendant neglected to seat belt the plaintiff, transported him in a vehicle that was too small, and drove in excess of the speed limit while

making sharp turns and weaving in and out of traffic—are far less egregious than those alleged in *Hope* and *Taylor*, where inmates were treated in ways that were "antithetical to human dignity." *Hope* v. *Pelzer*, supra, 536 U.S. 745. Thus, we cannot say that the defendant's conduct in the present case gave rise to a constitutional violation that should have been readily obvious to the defendant despite the lack of precedent declaring such conduct unlawful.

This is particularly true given that both the United States Supreme Court and the Second Circuit have held that conduct far worse than that alleged here was not so obvious as to constitute an eighth amendment violation in the absence of existing precedent. See, e.g., *Taylor* v. *Barkes*, 575 U.S. 822, 822–23, 826–27, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015) (defendants who failed to implement suicide prevention protocols, which allegedly led to arrestee's suicide, were entitled to qualified immunity because "[n]o decision of this [c]ourt establishes a right to the proper implementation of adequate suicide prevention protocols"); *Crawford* v. *Cuomo*, 721 Fed. Appx. 57, 60 (2d Cir. 2018) (defendant who sexually abused inmates was entitled to qualified immunity, despite "repugnant and intolerable" conduct, because "unconstitutional nature of [the defendant's] abuse was not clearly established" at time abuse occurred). Therefore, given that the present case involved a car accident with circumstances under which no federal court has found an eighth amendment violation, we decline to conclude, in light of the lack of existing relevant precedent, that the defendant's conduct was so bad as to constitute an obvious violation of the plaintiff's eighth amendment rights.

We are also not persuaded by the plaintiff's contention that, despite the lack of any relevant federal precedent, the defendant had fair notice that his conduct violated the constitution because the plaintiff was unsecured by a seat belt despite the defendant's knowledge of a department policy which states that "[t]ransportation staff and each inmate in all vehicles . . . shall use seat belts while en route." Conn. Dept. of Correction, Administrative Directive 6.4 (19) (A) (effective November 13, 2012). As noted previously in this opinion, the failure to seat belt an inmate does not constitute deliberate indifference. This is true even when the law requires the use of seat belts. See also *Carrasquillo* v. *New York*, supra, 324 F. Supp. 2d 438 (fact that New York law requires seat belts on buses was irrelevant to inmate's deliberate indifference claim).

Accordingly, because the defendant's conduct did not violate a clearly established constitutional right and because his conduct also was not severe enough to constitute an obvious constitutional violation in the absence of such clearly established law, the plaintiff's factual allegations in the present case do not give rise to

a constitutional violation. The plaintiff's claim, instead, sounds in negligence. See, e.g., *Hill* v. *Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("[a]llegations of a public official driving too fast for the road conditions are grounded in negligence"); *White* v. *New York*, United States District Court, Docket No. 10 CIV. 8689 (RJH) (S.D.N.Y. November 22, 2011) ("a negligence claim arising from one individual's careless conduct toward another is purely a matter of state tort law"); *Carrasquillo* v. *New York*, supra, 324 F. Supp. 2d 436 (constitution does not guarantee inmate's right "to non-negligent driving by government employees"). We decline to elevate what is essentially a common-law tort claim to a constitutional violation under § 1983. See *Parratt* v. *Taylor*, 451 U.S. 527, 544, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (declining to adopt reasoning that could allow "any party who is involved in nothing more than an automobile accident with a state official [to] allege a constitutional violation under § 1983"), overruled on other grounds by *Daniels* v. *Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).

In sum, because no federal case has held that the facts alleged in the present case give rise to a constitutional violation, it is not clearly established that the defendant's conduct violated the plaintiff's eighth amendment right against cruel and unusual punishment. Moreover, the defendant's conduct also is not so egregious as to constitute an obvious constitutional violation in the absence of existing precedent involving similar facts. Accordingly, the defendant is entitled to qualified immunity and the court erred in holding otherwise.[16]

The judgment is reversed and the case is remanded with direction to grant the defendant's motion for summary judgment and to render judgment thereon for the defendant.

In this opinion the other judges concurred.

[1] Although the plaintiff originally brought this action against both the defendant and Captain Jon Doe, Doe never was identified, never properly served, and has not appeared in this action. Accordingly, Doe is not participating in this appeal, and the appeal is brought only on behalf of the defendant.

[2] As a general rule, "[t]he denial of a motion for summary judgment . . . is an interlocutory ruling, and, accordingly, not a final judgment for purposes of appeal." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). The denial of a defendant's motion for summary judgment on the basis of qualified immunity, however, is an exception to this rule and is an appealable final judgment. See *Morgan* v. *Bubar*, 115 Conn. App. 603, 608–609, 975 A.2d 59 (2009). Accordingly, the defendant's claim that he is entitled to qualified immunity is properly before this court. See id.

[3] While this appeal was pending, the plaintiff was extradited to New York and is now incarcerated in a correctional facility there.

[4] According to a department administrative directive, which was attached to the defendant's motion for summary judgment, a black box is "[a] lockable plastic cover designed to limit tampering with a handcuff locking mechanism." Conn. Dept. of Correction, Administrative Directive 6.4 (3) (A) (effective November 13, 2012).

[5] The driver of the other car was uninjured in the crash.

[6] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor*

*cruel and unusual punishments inflicted.*" (Emphasis added.) U.S. Const., amend. VIII.

[7] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."

[8] On April 12, 2016, the plaintiff filed a motion to amend and an amended complaint. The motion to amend, however, was never ruled on by the court. Accordingly, the June 23, 2014 revised complaint is the operative complaint in this action.

[9] In the operative complaint, the plaintiff also pleaded a state common-law recklessness claim (count four), alleging that the defendant had acted wantonly and recklessly when transporting him. The plaintiff later abandoned that claim in his objection to the defendant's motion for summary judgment, stating, "[the plaintiff] is not suing the [defendant] . . . *pursuant to* [*Connecticut*] *common law* . . . . [The plaintiff] is suing [the defendant] pursuant to 42 U.S.C. § 1983 . . . ." (Emphasis added.) Accordingly, that claim was not argued before the trial court and is not before us on appeal.

The operative complaint further pleaded two counts (counts one and three) against Doe. As explained in footnote 1 of this opinion, however, Doe has never participated in this action. Accordingly, these counts also were not argued before the trial court and, thus, are not before us on appeal.

[10] The defendant also argued in his motion for summary judgment that the plaintiff had failed to exhaust his administrative remedies before bringing the underlying action. In ruling on the defendant's motion for summary judgment, the court concluded that the plaintiff had exhausted his administrative remedies, and the defendant does not challenge that ruling in this appeal.

[11] At the hearing on the defendant's motion for summary judgment, the plaintiff did not argue that the defendant was not entitled to qualified immunity because he had been sued in his personal capacity. The plaintiff also does not make that argument on appeal. Therefore, we need not consider that claim. We do note, however, that the Second Circuit has held that "qualified immunity shields a defendant official *sued in his individual capacity* from liability for civil damages . . . ." (Emphasis added; internal quotation marks omitted.) *Frank* v. *Relin*, 1 F.3d 1317, 1327–28 (2d Cir.), cert. denied, 510 U.S. 1012, 114 S. Ct. 604, 126 L. Ed. 2d 569 (1993).

[12] To the extent that, in his brief, the plaintiff frames the alleged constitutional right at issue as a right to be free from an unreasonable and substantial risk of harm, we conclude that such a description is too broad. See *Escondido* v. *Emmons*,     U.S.    , 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019) ("clearly established right must be defined with specificity"). Accordingly, we have narrowed the plaintiff's description of the constitutional right at issue.

[13] See footnote 7 of this opinion.

[14] We note that the United States Court of Appeals for the Fifth Circuit solely decided in this case that the inmate's deliberate indifference claim was not frivolous. *Rogers* v. *Boatright*, supra, 709 F.3d 409. The court did not specifically decide whether the inmate's allegations sufficiently stated a claim of deliberate indifference or whether the inmate's claim could survive a motion for summary judgment. Id. ("[w]e . . . express no opinion on the ultimate merits of [the inmate's] claim").

[15] We recognize that for a right to be clearly established, that right must have been clearly established at the time of the challenged conduct. See *Braham* v. *Newbould*, supra, 160 Conn. App. 302. In the interest of a full analysis, however, we have reviewed cases that were decided both before and after the challenged conduct in the present appeal. Even when considering cases that were decided after the conduct at issue here, we still conclude that the defendant's conduct did not give rise to a clear constitutional violation.

[16] This conclusion renders it unnecessary for us to consider the defendant's alternative ground for reversal, namely, that the court erred in (1) determining there were material facts in dispute, (2) misstating "the standard for [a] qualified immunity analysis," and (3) defining the plaintiff's alleged constitu-

tional right too broadly.

_____